## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND; and ARTHUR H. BUNTE, JR., as Trustee, | ) ) ) ) | |
| Plaintiffs, | ) ) ) | No. 13 C 6896 |
| v. | ) ) | Judge John J. Tharp, Jr. |
| ALLEGA CONCRETE CORPORATION, | ) ) ) | |
| Defendant. | ) | |

### Memorandum Opinion and Order

In this case, a pension fund and one of its trustees seek a declaratory judgment and injunction to bar an arbitration initiated by the defendant employer concerning the employer's withdrawal liability to the pension fund. The gist of the dispute is whether the defendant initiated the arbitration within the statutorily prescribed period, and the defendant has moved to dismiss the complaint on a variety of grounds. The plaintiffs, in turn, have raised by motion a threshold issue that must be addressed before the Court can address the merits of the motion to dismiss, namely, whether the timeliness of the employer's initiation of the arbitration proceeding is a question that should be determined by the arbitrator or this Court. Agreeing with the plaintiffs that this is a question for the Court under controlling Seventh Circuit authority, the Court grants the plaintiffs motion to stay the arbitration pending the Court's ruling on the timeliness issue.

### Background

Plaintiff Central States, Southeast and Southwest Areas Pension Fund ("the Plan") is a multiemployer pension plan (meaning that a number of different employers contribute to the plan on behalf of their employees; *see* 29 U.S.C. § 1301(a)(3)). Plaintiff Bunte is a trustee of the Plan

and he and his fellow trustees are the "plan sponsor" of Central States. 29 U.S.C. § 1301(a)(10)(A). For a period between approximately 2004 and 2008, Allega Concrete Corporation, the defendant in this case, was required to contribute to the Plan by virtue of collective bargaining agreements governing a Teamsters local comprising some of Allega's employees. In 2012, pursuant to the requirements of the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), the Plan determined that as of December 6, 2009, Allega had effected a "complete withdrawal" from the circumstances requiring it to contribute to the Plan. Pursuant to 29 U.S.C. § 1381(b), the Plan determined that Allega had incurred withdrawal liability in the amount of $371,570.83.[1] The Plan sent notice of this withdrawal liability to Allega on or about November 8, 2012.

Under the MPPAA, an employer has 90 days after receipt of notice of a withdrawal liability assessment to request review of that assessment. 29 U.S.C. § 1399(b)(2)(A). If there remains a dispute about the assessment of withdrawal liability after the 90-day review period, the employer may "initiate" arbitration of the dispute within a 60-day period beginning 120 days after the date that the employer requested review of the withdrawal liability.[2] 29 U.S.C. § 1401(a)(1). If the employer fails to timely initiate arbitration, the assessment becomes due and owing and the plan sponsor may bring an action in a state or federal court to collect the assessment. 29 U.S.C. § 1401(b).

---

[1] The MPPAA provides that when an employer withdraws from a multiemployer plan, it must pay "withdrawal liability" in an amount roughly equal to its proportionate share of the plan's unfunded vested benefits, which is the difference between the present value of a pension plan's assets and the present value of the benefits it will be obligated to pay in the future. *See* 29 U.S.C. §§ 1381–82, 1391; *Connolly v. Pension Benefit Guaranty Corp.*, 475 U.S. 211, 217 (1986).

[2] More completely, the employer is required to initiate arbitration within a 60-day period after the earlier of 120 days after the request for review, or the date of the response to such request. In this case, the earlier date is 120 days after the request for review; Allega complains that the Plan never responded to its request for review.

On January 17, 2013, within the permitted 90-day period after notice of the withdrawal liability, Allega requested review of the withdrawal liability assessment. In addition to setting out grounds for the requested reconsideration, Allega stated that "depending on the outcome of the request for reconsideration, it is the intention at this juncture for the employer to demand arbitration under 29 U.S.C. §§ 1401 *et. seq.*" Ex. B, Def.'s Mem., Dkt. 16-1. Over the next six months, Allega also sent seven required withdrawal liability progress payments to the Plan via overnight express mail;[3] each of these mailings included a cover letter that reiterated Allega's "intention . . . to demand arbitration" in the event that its request for review was denied. Ex. C, Def.'s Mem., Dkt. 16-1.

Based on the date of its request for review, Allega had 180 days, until July 16, 2013, to initiate an arbitration to resolve its dispute concerning withdrawal liability.[4] On July 9, 2013, Allega sent a letter to the Plan stating, in part, that "[n]o information [in response to Allega's request for review] was forthcoming from the Fund, thus necessitating this demand for arbitration." Ex. D, Def.'s Mem., Dkt. 16-1. About three weeks later, on July 29, 2013, Allega submitted its claim to the American Arbitration Association ("AAA"). Ex. B, Pl.'s Reply, Dkt. 27-2; Ex. H, Def.'s Mem., Dkt. 16-1. The Plan, in turn, notified the AAA on August 13, 2013, that it "disputes the AAA's jurisdiction of this case due to the fact that Allega Concrete did not timely initiate arbitration." Ex. A, Pl.'s Reply, Dkt. 27-1. Notwithstanding its objection to the AAA's "jurisdiction," the Plan participated in a conference call with the arbitrator and Allega's counsel on September 23, during which it objected to the arbitrator's adjudication of the question

---

[3] Employers who have been assessed withdrawal liability are required to make periodic progress payments until the dispute over withdrawal liability has been resolved. *See* 29 U.S.C. § 1401(d).

[4] Calculated as follows: Date of request (January 17, 2013) + 120 days after request + 60-day arbitration window = maximum of 180 days after January 17, 2013, or July 16, 2013. Allega erroneously calculates this date as July 17, 2013.

of whether Allega had timely initiated the arbitration. The Plan then filed its complaint in this Court for declaratory judgment and to enjoin arbitration with the AAA on September 25, 2013, and two days later, on September 27, 2013, filed with the AAA a motion to stay the arbitration. Ex. B, Pl.'s Reply, Dkt. 27-2.

Under the MPPAA, the Pension Benefit Guaranty Corporation ("PBGC") has the authority to promulgate implementing regulations. 29 U.S.C. §§ 1395, 1399(c)(7). Allega maintains that its July 9, 2013, arbitration demand was a timely initiation of arbitration and complied fully with the PBGC implementing regulations. The arbitration demand was sent to the Plan before the 60-day window closed and the PBGC rules require that the notice of arbitration be sent only to the opposing party, not to the arbitrator or any other person or entity. *See* 29 C.F.R. § 4221.3(c). The PBGC rules impose some limited requirements as to the contents of the notice of arbitration—*see* 29 C.F.R. § 4221.3(d)—but the Plan does not argue that the notice was deficient in that regard.[5] Since it is undisputed that the Plan received the July 9 demand for arbitration before the 60-day arbitration initiation window closed on July 16, Allega maintains that it timely initiated arbitration and that the Plan is therefore required to arbitrate the issues pertaining to Allega's purported withdrawal liability. Acceptance of Allega's argument would require the granting of its motion to dismiss the complaint.

The Plan grounds its argument that Allega failed to initiate the arbitration before the deadline imposed by the MPPAA on a provision of the PBGC implementing regulations that allows a plan to adopt alternative rules to those promulgated by the PBGC itself. The PBGC regulations specifically provide that "an arbitration may be conducted in accordance with an

---

[5] Allega did fail to include as an attachment the Plan's assessment of withdrawal liability, as required by § 4221(d), but Allega rectified that omission by resending the notice on July 10 with that document.

alternative arbitration procedure approved by the PBGC." 29 C.F.R. § 4221.14(a). In 1986, the

PBGC approved the AAA's arbitration rules. *See* 51 Fed Reg. 22,585 (June 20, 1986); *Central*

*States, Southeast & Southwest Areas Pension Fund v. Ditello*, 974 F.2d 887, 892 (7th Cir. 1992)

("Central States has adopted the AAA arbitration rules which, pursuant to 29 C.F.R.

§ 2641.13(c), have been approved by the PBGC.").

The AAA rules provide, among other things, that to "initiate" an arbitration, the party

demanding arbitration must file at any Regional Office of the AAA two copies of the arbitration

demand (along with a required administrative fee). Ex. F, Def.'s Mem., Dkt. 16-1. Section

6(b)(1) of the Plan expressly adopts the AAA arbitration rules:

> Manner of Initiation: Arbitration is initiated by written notice to the
> Chicago Regional Office of the American Arbitration Association
> ("AAA") with copies to the Fund (or if initiated by the Fund to the
> Employer) and the bargaining representative (if any) of the affected
> employees of the Employer. Such arbitration will be conducted, except
> as otherwise provided in these rules, in accordance with the
> "Multiemployer Pension Plan Arbitration Rules" (the "AAA Rules")
> administered by the AAA. The initial filing fee is to be paid by the party
> initiating the arbitration proceeding. Arbitration is timely initiated if
> received by the AAA along with the initial filing fee within the time
> period prescribed by ERISA Section 4221(a)(1).

Ex. G § 6(b)(1), Def.'s Mem., Dkt. 16-1. Allega did not provide notice of its arbitration demand

to the AAA until July 29, 2013, almost two weeks after the close of the 60-day arbitration

initiation window provided by § 1401(a)(1). Accordingly, the Plan argues, Allega failed to

timely initiate the arbitration. It maintains, therefore, that Allega should be enjoined from

proceeding with its arbitration proceeding against the Plan.

### The Threshold Issue of the Arbitrability
### of the Timeliness of Allega's Initiation of Arbitration

Before the Court can address the question of whether Allega's arbitration request was

timely, the Court must determine whether the issue of the timeliness of the arbitration initiation

is an issue for the Court or an arbitrator to decide.[6] Usually, when this question arises, it is in the context of an arbitration agreement between the parties, and in that context, the Supreme Court has said clearly that, absent a contrary intention clearly expressed in the agreement, the timeliness of arbitration is a question for the arbitrator. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 85 (2002) (holding that question of whether NASD limitations rules barred private arbitration "is a matter presumptively for the arbitrator, not for the judge"). That is because, the Court concluded, the parties to private arbitration agreements would likely expect that their agreement to arbitrate would encompass procedural questions that grow out of the dispute and bear on its final disposition of the issue. *Id.* at 84.

But here, the arbitration requirement derives not from a private agreement between the parties but from statute.[7] The MPPAA requires arbitration only of a dispute "concerning a determination made under sections 1381 through 1399" of the Act. 29 U.S.C. § 1401(a)(3)(A). Those are the withdrawal liability provisions and do not include the provisions regarding the timing of arbitration initiation, which are set forth in section 1401. Thus, in the present context, there is no basis to infer an agreement between the parties to submit questions about the timeliness of the initiation of arbitration to an arbitrator: the statute requiring arbitration excludes the arbitration initiation provisions from the scope of arbitrable issues.

---

[6] Allega raises a second threshold question regarding the Plan's standing to assert the claims set forth in the complaint. Allega contends that ERISA's remedial provisions permit only plan participants, beneficiaries, and fiduciaries to bring suit to enforce the statute's requirements. But the Seventh Circuit has squarely held that a multiemployer pension plan *is* a fiduciary under ERISA—*see Line Constr. Benefit Fund v. Allied Elec. Contractors, Inc.*, 591 F.3d 576, 579 (7th Cir. 2010)—so Allega's standing argument goes nowhere. The argument would accomplish nothing even if it had merit, since Allega does not (and cannot) dispute that Plaintiff Bunte, a trustee of the Plan, is an ERISA fiduciary. Whether the Plan has standing or not, Bunte does and the suit may therefore go forward regardless.

[7] The arbitration provisions in the Plan mirror those of the statute, referring only matters of withdrawal liability to arbitration. *See* Ex. G § 6, Pl.'s Mem., Dkt. 16-1.

Consistent with the MPPAA's limitation on the scope of required withdrawal liability arbitration, the Seventh Circuit and other courts have expressly held that the question of the timeliness of the initiation of withdrawal liability arbitration under the MPPAA is for courts, not arbitrators, to decide. *See, e.g.*, *Robbins v. Chipman Trucking, Inc.*, 866 F.2d 899, 902 (7th Cir. 1988); *Doherty v. Teamsters Pension Trust Fund of Phila. & Vicinity*, 16 F.3d 1386, 1391 n.4 (3d Cir. 1994); *Pension Plan for Pension Trust Fund for Operating Eng'rs v. Weldway Constr., Inc.*, 920 F. Supp. 2d 1034, 1045 (N.D. Cal. 2013); *Trs. of the Laborers' Local 310 Pension Fund v. Able Contracting Grp., Inc.*, No. 06CV1925, 2006 WL 3023031, at *5 (N.D. Ohio Oct. 23, 2006). In so holding, the Seventh Circuit explained,

> if the question of whether arbitration was waived remained a question for the arbitrator, the time limits in the statute would be toothless; employers could ignore the 120-day statutory limit for initiating arbitration and then move to dismiss the pension fund's subsequent collection suit, claiming that the matter had to return to the arbitrator for a determination of whether the failure to file constituted a waiver. Our decision [committing the question of the timeliness of the initiation of the arbitration] allows the statutory time limit to retain its bite.

*Chipman Trucking, Inc.*, 866 F.2d at 902.

Although Allega cites *Howsam* in its opening brief in support of its motion to dismiss and appears to assert there that the question of the timeliness of its initiation of arbitration should be determined by the arbitrator (Pl.'s Mem. 13, Dkt. 16), in its reply brief it expressly concedes that "the issue of whether an employer followed the controlling 'initiation of arbitration' rule is for Article III courts to resolve, rather than experienced withdraw [sic] liability arbitrators." Pl.'s Reply 9, Dkt. 20. Consistent with that concession, Allega opposes the plaintiffs' motion to stay the arbitration proceeding pending that determination only on the ground that the plaintiffs have effectively waived their right to seek a judicial determination of the timeliness of the arbitration notice by participating in the arbitration.

7

That argument has no merit. While it is true that a party that submits an issue to arbitration may be deemed to have waived the right to a judicial adjudication of that issue, there is no waiver of the right to litigate an issue in court when a party expressly objects to arbitration and participates only to the degree necessary to protect its rights. *AGCO Corp. v. Anglin*, 216 F.3d 589, 593 (7th Cir. 2000) (If "a party clearly and explicitly reserves the right to object to arbitrability, his participation in the arbitration does not preclude him from challenging the arbitrator's authority in court."). And here, it appears that the plaintiffs did everything in their power to object to the arbitration. As they detail in their reply brief, they objected to the arbitration by letter to the AAA on August 13, 2013; they objected to the arbitrator's adjudication of the timeliness issue in a conference call with the arbitrator on September 23, 2013; they filed a motion in the arbitration seeking to stay the arbitration so that the timeliness issue could be adjudicated in court; and—last but certainly not least—the plaintiffs filed a law suit in this court seeking to enjoin the arbitration altogether (and in which they filed the instant motion to stay the arbitration proceedings pending adjudication of the timeliness issue by the court). In light of these actions, Allega's effort to characterize the plaintiffs as playing a "heads I win, tails you lose" game of deception regarding their willingness to arbitrate flirts with the outer boundaries of permissibly zealous advocacy. The plaintiffs were not required to stand by while Allega proceeded with an arbitration against them in absentia; they were entitled to, and did, participate in the arbitration under protest and while actively seeking to stop the arbitration from proceeding. Nothing more could have been expected from them.

\* \* \* \* \*

For the reasons set forth above, the Court grants the plaintiffs' "Motion for Order Enjoining Defendant from Arbitrating Its Claim," which despite its title, seeks only to bar further

proceedings in the arbitration until the Court has addressed the question of the timeliness of Allega's initiation of the arbitration. Further proceedings on the arbitration claim submitted by Allega to the AAA on or about July 29, 2013, concerning Allega's purported withdrawal liability owed to the Plan, are hereby stayed pending further order of this Court.

Date: January 9, 2014          Enter: _____

                                 John J. Tharp, Jr.
                                 United States District Judge