# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND; and ARTHUR H. BUNTE, JR., as Trustee, <br><br>Plaintiffs, <br><br>v. <br><br>ALLEGA CONCRETE CORPORATION, <br><br>Defendant. | No. 13 C 6896 <br><br> Judge John J. Tharp, Jr. |

## Memorandum Opinion and Order

In this case, a pension fund and one of its trustees seek a declaratory judgment and injunction to bar an arbitration initiated by the defendant employer concerning the employer's withdrawal liability to the pension fund. The gist of the dispute is whether the defendant initiated the arbitration within the statutorily prescribed period. The defendant has moved to dismiss the complaint on a variety of grounds. None has merit and the Court denies the motion to dismiss.[1] Further, because there do not appear to be any disputes of fact material to the claim for declaratory relief and rejection of the motion to dismiss necessarily resolves the legal issues presented by the plaintiffs' complaint, the Court provides notice pursuant to Federal Rule of Civil Procedure 56(f) that it is considering entering judgment on the complaint in favor of the

---

[1] On January 9, 2014, the Court entered an opinion and ordering addressing the threshold question of whether the timeliness of the defendant's arbitration demand was a matter for resolution by this Court or the arbitrator ("January 9 Order"). The Court found that timeliness of the demand is for judicial resolution and stayed further proceedings in the arbitration until further order. In addition, the Court sought further briefing from the parties on a question relevant to the merits of the dispute, namely whether expiration of Allega's participation agreements is relevant to the question of whether the arbitration demand was timely. The plaintiffs submitted a timely brief addressing that question. Allega's brief was due on January 24, 2014, but it filed nothing.

plaintiffs. The defendant has leave to file a response on or before February 14, 2014, setting forth any reasons that summary judgment should not be granted in light of this opinion.

## BACKGROUND[2]

Plaintiff Central States, Southeast and Southwest Areas Pension Fund ("the Plan") is a multiemployer pension plan (meaning that a number of different employers contribute to the plan on behalf of their employees; *see* 29 U.S.C. § 1301(a)(3)). Plaintiff Bunte is a trustee of the Plan and he and his fellow trustees are the "plan sponsor" of Central States. 29 U.S.C. § 1301(a)(10)(A). For a period between approximately 2004 and 2008, Allega Concrete Corporation, the defendant in this case, was required to contribute to the Plan by virtue of collective bargaining agreements governing a Teamsters local comprising some of Allega's employees. In 2012, pursuant to the requirements of the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), the Plan determined that as of December 6, 2009, Allega had effected a "complete withdrawal" from the circumstances requiring it to contribute to the Plan. Pursuant to 29 U.S.C. § 1381(b), the Plan determined that Allega had incurred withdrawal liability in the amount of $371,570.83.[3] The Plan sent notice of this withdrawal liability to Allega on or about November 8, 2012.

Under the MPPAA, an employer has 90 days after receipt of notice of a withdrawal liability assessment to request review of that assessment. 29 U.S.C. § 1399(b)(2)(A). If there remains a dispute about the assessment of withdrawal liability after the 90-day review period, the

---

[2] This background information is also set forth in the January 9 Order.

[3] The MPPAA provides that when an employer withdraws from a multiemployer plan, it must pay "withdrawal liability" in an amount roughly equal to its proportionate share of the plan's unfunded vested benefits, which is the difference between the present value of a pension plan's assets and the present value of the benefits it will be obligated to pay in the future. *See* 29 U.S.C. §§ 1381–82, 1391; *Connolly v. Pension Benefit Guaranty Corp.*, 475 U.S. 211, 217 (1986).

employer may "initiate" arbitration of the dispute within a 60-day period beginning 120 days after the date that the employer requested review of the withdrawal liability.[4] 29 U.S.C. § 1401(a)(1). If the employer fails to timely initiate arbitration, the assessment becomes due and owing and the plan sponsor may bring an action in a state or federal court to collect the assessment. 29 U.S.C. § 1401(b).

On January 17, 2013, within the permitted 90-day period after notice of the withdrawal liability, Allega requested review of the withdrawal liability assessment. In addition to setting out grounds for the requested reconsideration, Allega stated that "depending on the outcome of the request for reconsideration, it is the intention at this juncture for the employer to demand arbitration under 29 U.S.C. §§ 1401 *et. seq.*" Ex. B, Def.'s Mem., Dkt. 16-1. Over the next six months, Allega also sent seven required withdrawal liability progress payments to the Plan via overnight express mail;[5] each of these mailings included a cover letter that reiterated Allega's "intention . . . to demand arbitration" in the event that its request for review was denied. Ex. C, Def.'s Mem., Dkt. 16-1.

Based on the date of its request for review, Allega had 180 days, until July 16, 2013, to initiate an arbitration to resolve its dispute concerning withdrawal liability.[6] On July 9, 2013, Allega sent a letter to the Plan stating, in part, that "[n]o information [in response to Allega's

---

[4] More completely, the employer is required to initiate arbitration within a 60-day period after the earlier of 120 days after the request for review, or the date of the response to such request. In this case, the earlier date is 120 days after the request for review; Allega complains that the Plan never responded to its request for review.

[5] Employers who have been assessed withdrawal liability are required to make periodic progress payments until the dispute over withdrawal liability has been resolved. *See* 29 U.S.C. § 1401(d).

[6] Calculated as follows: Date of request (January 17, 2013) + 120 days after request + 60-day arbitration window = maximum of 180 days after January 17, 2013, or July 16, 2013. Allega erroneously calculates this date as July 17, 2013.

request for review] was forthcoming from the Fund, thus necessitating this demand for arbitration." Ex. D, Def.'s Mem., Dkt. 16-1. About three weeks later, on July 29, 2013, Allega submitted its claim to the American Arbitration Association ("AAA"). Ex. B, Pl.'s Reply, Dkt. 27-2; Ex. H, Def.'s Mem., Dkt. 16-1. The Plan, in turn, notified the AAA on August 13, 2013, that it "disputes the AAA's jurisdiction of this case due to the fact that Allega Concrete did not timely initiate arbitration." Ex. A, Pl.'s Reply, Dkt. 27-1. Notwithstanding its objection to the AAA's "jurisdiction," the Plan participated in a conference call with the arbitrator and Allega's counsel on September 23, during which it objected to the arbitrator's adjudication of the question of whether Allega had timely initiated the arbitration. The Plan then filed its complaint in this Court for declaratory judgment and to enjoin arbitration with the AAA on September 25, 2013, and two days later, on September 27, 2013, filed with the AAA a motion to stay the arbitration. Ex. B, Pl.'s Reply, Dkt. 27-2.

The plaintiffs then filed, on December 20, 2013, a motion to stay the arbitration proceedings pending a ruling by this Court on whether the timeliness issue was a matter for judicial or arbitral resolution. The Court granted that motion. *See* January 9 Order.

**ARGUMENT**

Allega first contends that the Plan lacks standing to assert the claims set forth in the complaint. The Court addressed, and disposed of, Allega's standing argument in its January 9 Order. While it is true, as Allega contends, that ERISA's remedial provisions permit only plan participants, beneficiaries, and fiduciaries to bring suit to enforce the statute's requirements, that fact has no relevance as to the plaintiffs in this case. The Seventh Circuit has squarely held that a multiemployer pension plan *is* a fiduciary under ERISA. *See Line Constr. Benefit Fund v. Allied Elec. Contractors, Inc.*, 591 F.3d 576, 579 (7th Cir. 2010). Moreover, Allega does not (and

cannot) dispute that Plaintiff Bunte, a trustee of the Plan, is an ERISA fiduciary. Whether the Plan has standing or not, Bunte does. Thus, Allega's standing argument goes nowhere. Both plaintiffs have standing to assert claims relating to Allega's withdrawal liability.

Allega's principal argument for dismissing the plaintiffs' complaint is that its arbitration demand was timely under the rules promulgated by the Pension Benefit Guaranty Corporation ("PGBC"). Under the MPPAA, the PBGC has the authority to promulgate implementing regulations. 29 U.S.C. § 1399(c)(7). Allega maintains that its July 9, 2013, arbitration demand was a timely initiation of arbitration and complied fully with the PBGC implementing regulations. The arbitration demand was sent to the Plan before the 60-day window closed and the PBGC rules require that the notice of arbitration be sent only to the opposing party (as it was in this case), and not to the arbitrator or any other person or entity. *See* 29 C.F.R. § 4221.3(c). The PBGC rules impose some limited requirements as to the contents of the notice of arbitration—*see* 29 C.F.R. § 4221.3(d)—but the plaintiffs do not argue that the notice was deficient in that regard.[7] Since it is undisputed that the Plan received the July 9 demand for arbitration before the 60-day arbitration initiation window closed on July 16, Allega maintains that it timely initiated arbitration and that the Plan is therefore required to arbitrate the issues pertaining to Allega's purported withdrawal liability.

As the Plan points out, however, the PBGC implementing regulations also allow a plan to adopt, in lieu of the procedures specifically adopted by the PBGC, alternative arbitration rules to those promulgated by the PBGC itself. The PBGC regulations specifically provide that "an arbitration may be conducted in accordance with an alternative arbitration procedure approved

---

[7] Allega did fail to include as an attachment the Plan's assessment of withdrawal liability, as required by § 4221(d), but Allega rectified that omission by resending the notice on July 10 with that document.

by the PBGC." 29 C.F.R. § 4221.14(a). In 1986, the PBGC approved the AAA's arbitration rules. *See* 51 Fed Reg. 22,585 (June 20, 1986); *Central States, Southeast & Southwest Areas Pension Fund v. Ditello*, 974 F.2d 887, 892 (7th Cir. 1992) ("Central States has adopted the AAA arbitration rules which, pursuant to 29 C.F.R. § 2641.13(c), have been approved by the PBGC."). The plaintiffs assert that Allega's compliance with the PGBC's own arbitration procedures is irrelevant because Allega failed to comply with the procedures required under the AAA rules, which the Plan had—as authorized by the PGBC—adopted as its own.

The AAA rules provide, among other things, that to "initiate" an arbitration, the party demanding arbitration must file at any Regional Office of the AAA two copies of the arbitration demand (along with a required administrative fee). Ex. F, Def.'s Mem., Dkt. 16-1. Section 6(b)(1) of the Plan expressly adopts the AAA arbitration rules:

> Manner of Initiation: Arbitration is initiated by written notice to the Chicago Regional Office of the American Arbitration Association ("AAA") with copies to the Fund (or if initiated by the Fund to the Employer) and the bargaining representative (if any) of the affected employees of the Employer. Such arbitration will be conducted, except as otherwise provided in these rules, in accordance with the "Multiemployer Pension Plan Arbitration Rules" (the "AAA Rules") administered by the AAA. The initial filing fee is to be paid by the party initiating the arbitration proceeding. Arbitration is timely initiated if received by the AAA along with the initial filing fee within the time period prescribed by ERISA Section 4221(a)(1).

Ex. G § 6(b)(1), Def.'s Mem., Dkt. 16-1. Allega did not provide notice of its arbitration demand to the AAA until July 29, 2013, almost two weeks after the close of the 60-day arbitration initiation window provided by § 1401(a)(1). Accordingly, the Plan argues, Allega failed to timely initiate the arbitration. It maintains, therefore, that Allega should be enjoined from proceeding with its arbitration proceeding against the Plan.

6

Allega offers three reasons why it was not subject to the AAA rules governing the initiation of arbitration. First, it maintains that the participation agreements between itself and the union expired by 2008,[8] and so it was not bound by the terms of the Plan—such as the Plan's adoption of the AAA arbitration rules—when it initiated arbitration in July 2013. This is the issue as to which the Court sought further briefing from the parties, and the plaintiffs' submission explains why expiration of the participation agreements between Allega and the union did not relieve Allega of its obligation to comply with the arbitration initiation requirements set forth in the Plan: the PBGC rules give the Plan the power to adopt rules governing withdrawal liability arbitration so long as those rules have been approved by the PBGC; the agreement or consent to those rules by affected employers is not required. As the plaintiffs further explain:

> Therefore, it does not matter whether the participation agreements expired because Allega is bound by the rules regardless of whether it agreed to them. As the Court stated in rejecting Allega's argument concerning whether it was for the Court to decide the timeliness issue, "the arbitration requirement derives not from a private agreement between the parties but from statute." Similarly, Central States' rules for initiating arbitration do not derive from Allega's agreement to be bound by them, but rather from the PBGC's approval of those rules pursuant to the statute and regulations.

Plaintiffs' Surreply 2, Dkt. 31 (citation omitted).

Allega also asserts that the AAA rules in effect when it demanded arbitration in July 2013 have never been approved by the PBGC and therefore cannot supply the requirements applicable to the initiation of arbitration in July 2013, when Allega made its demand. This argument lacks any merit. Notwithstanding the fact that the AAA rules were amended effective February 2013, those amendments did not affect the Plan's express statement that "arbitration is

---

[8] The plaintiffs dispute this claim, but resolution of that fact issue is not necessary to evaluation of the legal argument.

initiated" by timely written notice and payment of the required arbitration fee to both the AAA and to the Fund. That requirement, included in the Plan long before 2013, is consistent with the requirements of the version of the AAA rules expressly approved by the PBGC in 1985 and again in 1986. In any event, Allega does not assert that there is any substantive difference between the AAA rules in effect in 2013 and those approved by the PBGC in 1985/86, and for good reason: there is none. Like the 2013 version, the 1985/86 PBGC-approved version required notice to both the AAA and to the Plan in order to initiate an arbitration. *See* Multi-employer Pension Plan Arbitration Rules for Withdrawal Liability Disputes, effective June 1, 1981, revised Effective September 1, 1986.[9]

Allega's third contention—that the PBGC approved only the AAA rules regarding "the conduct" of arbitrations and not the rules relating to the "initiation" of arbitration—is a makeweight that flies directly in the face of the Seventh Circuit's holding in *Ditello* that the PBGC adopted the AAA rules governing the "initiation" of arbitration. *See* 974 F.2d at 892-93 ("Under the Central States/AAA rules, arbitration is initiated by (1) written notice to Central States; (2) written notice to the AAA; and (3) payment of the AAA filing fee."). Allega cites no authority for its contrary argument.

Ironically in view of its own failure to timely initiate arbitration, Allega also maintains that "allowing Plaintiffs to invoke the discretionary [Declaratory Judgment Act] thwarts Congress' intent under the MPPAA that withdrawal liability disputes be swiftly docketed, heard,

---

[9] Available at http://www.adr.org/cs/idcplg (last visited Jan. 26, 2014); *see also Ditello,* 974 F.2d at 893 n.3 (quoting the arbitration initiation rules approved by the PBGC). Section 7, Initiation of Arbitration, provides in relevant part:

Arbitrations under these Rules are initiated in the following manner:

(a)(i) The initiating party gives notice to the other party . . . ***and*** (ii) files at any Regional Office of the AAA two (2) copies of said notice, together with the appropriate administrative fee . . . ."

and decided." Def.'s Mot. 14, Dkt. 16. The short answer to this argument is that Congress also plainly held that any claim that had not been submitted to arbitration within the permissible period set forth in § 1401 cannot be arbitrated at all. Far from being inconsistent with a congressional policy favoring prompt arbitration of withdrawal liability disputes, the plaintiffs' efforts to terminate an arbitration brought outside those limits is perfectly consistent with that policy. The statutorily prescribed requirements "would be toothless," to use the words of the Seventh Circuit in *Robbins v. Chipman Trucking, Inc.,* 866 F.2d 899, 902 (7th Cir. 1988), if they are not enforced.

Finally, Allega's related attempt to invoke the Plan's failure to respond to its request for review as ground for dismissing their request for a declaratory judgment is unavailing. Allega cites no authority for the proposition that failure to respond to a review request in accordance with 29 U.S.C. § 1399(b)(2)(B) extends the time for initiating arbitration,[10] and, again, that

---

[10] Allega cites two cases in support of this contention, but neither bears on the argument. Indeed, Allega's descriptions of these cases is so off-base that they compel consideration of whether the descriptive errors were the product of good faith.

In *Central States, Southeast and Southwest Areas Pension Fund v. St. Louis Post-Dispatch, LLC*, No. 07 C 1384, 2007 WL 2492084, *4 (N.D. Ill. Aug. 28, 2007), the court did not, as Allega asserts, hold that Central States' failure to respond to a withdrawing employer's request for assessment reconsideration tolls the initiation of the arbitration requirement under § 1401. Rather, the court denied the employer's motion to dismiss, holding that it was inappropriate to consider any argument about tolling in conjunction with that motion. The court made no substantive holding about the merits of the tolling argument and, in any event, did not consider the Seventh Circuit's ruling in *Chipman Trucking*. Moreover, *St. Louis Dispatch* did not involve a question of tolling based on the Plan's failure to respond to a request for review of a withdrawal liability assessment; the question was whether the employer's failure to make such a request foreclosed its ability to seek arbitration of the dispute.

*Central States, Southeast and Southwest Areas Pension Fund v. C. & V. Leasing, Inc.*, No. 09 C 2871, 2010 WL 3024923 (N.D. Ill. July 30, 2010), is equally inapt. Allega implies that the case stands for the proposition that to comply with the requirement that an assessment of withdrawal liability be provided "as soon as practicable after withdrawal," as required by 29 U.S.C. § 1399(b), the Plan is required to provide the assessment within 10 days. In fact, however, the case did not involve the question of whether a failure to provide a timely withdrawal assessment under § 1399(b) would toll the time for initiation of arbitration under

9

argument is directly contradicted by Seventh Circuit precedent; in *Chipman Trucking,* the Seventh Circuit enforced the arbitration initiation deadline notwithstanding the Plan's failure to respond to the employer's request for review before the arbitration deadline passed. *See* 866 F.2d at 901.

\* \* \* \* \*

For the reasons set forth above, the Court denies the defendant's motion to dismiss. The stay of arbitration proceedings entered by the Court on January 9, 2014, remains in effect. The defendant's motion was predicated on an argument that, as a matter of law, its initiation of arbitration was timely. To the contrary, it appears, based on the undisputed facts before the Court, that the initiation of arbitration was untimely as a matter of law and the Court is therefore considering whether summary judgment should be granted to the plaintiffs. Accordingly, and pursuant to Federal Rule of Civil Procedure 56(f), the defendant is granted leave to file, on or before February 14, 2014, a response setting forth any argument, not already addressed by this opinion or the January 9 Order, as to why the Court should not grant summary judgment to the plaintiffs based on the undisputed facts set forth in the parties' submissions.

Date: January 28, 2014  Enter: _____
John J. Tharp, Jr.
United States District Judge

---

§ 1401, but only the issue of whether the Plan had promptly objected that the employer's initiation of arbitration was untimely. The court did not address the meaning of "as soon as practicable" in § 1399(b), and did not in any event hold that actions are "prompt" within the meaning of the MPPAA only if taken within 10 days. Indeed, the court addressed that issue only in pointing out, in response to the employer's argument, that the Plan had satisfied even that standard. Contrary to Allega's representation, the court made no ruling at all that a 10-day standard applies in the context of any of the requirements of the MPPAA.

10