UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND; and ARTHUR H. BUNTE, JR., as Trustee, <br><br> Plaintiffs, <br><br> v. <br><br> ALLEGA CONCRETE CORPORATION, <br><br> Defendant. | No. 13 C 6896 <br><br> Judge John J. Tharp, Jr. |

## MEMORANDUM OPINION AND ORDER

The plaintiffs in this case, Central States, Southeast and Southwest Areas Pension Fund and Arthur Bunte, are a multiemployer pension fund and its Trustee (they are referred to collectively herein as "the Plan"). The complaint seeks a declaratory judgment that defendant Allega Concrete Corporation's attempt to arbitrate the issue of its withdrawal liability was untimely and an injunction barring the arbitration from going forward. This is the third in a series of orders advancing toward a resolution of that issue. The first order (Dkt. 30; "Order I"), entered in response to the Plan's motion for an order enjoining Allega from arbitrating its withdrawal liability claim, addressed the question of whether the timeliness of the employer's arbitration demand was itself subject to arbitration; it held that the question must be resolved by the Court and stayed the arbitration pending a ruling on that issue. The second order (Dkt. 33; "Order II") denied Allega's motion to dismiss the complaint, which was premised on arguments that the arbitration was timely as a matter of law. The Court found, instead, that based on

seemingly undisputed facts,[1] it appeared as a matter of law that Allega's attempt to initiate arbitration of its withdrawal liability was in fact *untimely*. In conjunction with its denial of the motion to dismiss, therefore, the Court provided notice to Allega pursuant to Federal Rule of Civil Procedure 56(f)(3) that it was considering whether summary judgment should be granted to the Plan and provided an opportunity for Allega to submit "a response setting forth any argument, not already addressed by [the Court's two orders] as to why the Court should not grant summary judgment to the plaintiffs based on the undisputed facts set forth in the parties' submissions."

Allega's response to the Court's notice ("Response") raises several issues. First, Allega maintains that "the Federal Rules of Civil Procedure do not permit an Article III Court to unilaterally petition and advocate for Rule 56 summary judgment, without so much as a motion being filed by any of the parties." That contention is simply wrong. Rule 56(f)(3)—which the Court cited as the authority for its notice to Allega—expressly permits district courts to "consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute." The Seventh Circuit has repeatedly affirmed the authority of district court's to grant summary judgment *sua sponte* as long as notice and an opportunity to respond are provided to the party that would oppose the judgment. *See, e.g., Jones v. City of Elkhart, Ind.*, 737 F.3d 1107, 1117 (7th Cir. 2013) ("The court provided the litigants with notice of the issue and an opportunity to brief it; that is all that the Federal Rules require it to do in granting summary judgment for an issue not raised by the initial summary judgment brief.");

---

[1] Allega brought its motion under both Rule 12(b)(1) and 12(b)(6). As the complaint referenced numerous documents, both parties relied on documentary evidence to support their arguments; neither party contested the authenticity or admissibility of any document offered by the opposing party.

*Acequia, Inc. v. Prudential Ins. Co. of Am.,* 226 F.3d 798, 807 (7th Cir. 2000) ("A district court is permitted to enter summary judgment *sua sponte* if the losing party has proper notice that the court is considering granting summary judgment and the losing party has a fair opportunity to present evidence in opposition."). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986) ("Our conclusion is bolstered by the fact that district courts are widely acknowledged to possess the power to enter summary judgments *sua sponte,* so long as the losing party was on notice that she had to come forward with all of her evidence."). Allega's response does not address Rule 56(f)(3) at all, notwithstanding the Court's invocation of that rule; its contention that the Court is not authorized to enter a judgment *sua sponte* after notice to the affected party is baseless.

Allega maintains that there are a number of material fact disputes as to which discovery is required before summary judgment can properly be considered. None of the issues it raises, however, involves a fact dispute that is material to the question of whether its initiation of withdrawal liability arbitration against the Plan was timely.

Seeking to create a fact issue as to the relevant version of the AAA rules, Allega first questions "[w]hether the American Arbitration Association rules for resolving withdrawal liability disputes that Plaintiffs are requiring through this action to foist upon Defendant were ever promulgated, considered, or approved by the federal Pension Benefit Guaranty Corporation ('PBGC')?" This is an issue that the Court considered and addressed in denying Allega's motion to dismiss. As noted in Order II, the PBGC expressly approved the AAA arbitration rules, as revised effective September 1, 1986.

3

*See* Order II at 5-6; 51 Fed. Reg. 22,585 (June 20, 1986). [2] The Seventh Circuit, moreover, has expressly held that "Central States has adopted the AAA arbitration rules which, pursuant to 29 C.F.R. § 2641.13(c), have been approved by the PBGC." *Central States, Se. & Sw. Areas Pension Fund v. Ditello*, 974 F.2d 887, 892 (7th Cir. 1992).

Allega's response to this unassailable fact, also previously addressed by the Court in Order II, is that the PBGC has not approved the amended version of the AAA rules that went into effect in February 2013. It takes issue with the Court's conclusion in Order II (at 7-8) that there is no substantive difference between the rules in effect in 2013 and those approved by the PBGC, maintaining that the latter set out the provision relating to filing the arbitration demand with the AAA as an "alternative" means of initiating an arbitration to providing an arbitration demand directly to the adverse party. Allega states in its Response (Dkt. 42, at 3):

> Unilaterally, and without any request of, or proposal to the PBGC, and without any promulgation of approval by the PBGC, the American Arbitration Association unilaterally amended its "initiation of arbitration" rules by substituting what was a former "or" to an "and" requirement that two copies of a notice issued to a Multi-Employer Fund, "together with the appropriate administrative fee as provided in the administrative fee schedule" be sent to AAA and be made part and parcel of any recognized "initiation of arbitration" demand under the Multi-Employer Pension Plan Amendment Act.

Allega's assertion that the prior version of the AAA rules set forth the provision relating to filing the demand with the AAA as an "alternative" means of initiating the arbitration, while the 2013 rules make it mandatory, is also wrong, for several reasons.

---

[2] The AAA rules approved are the "Multi-Employer Pension Plan Arbitration Rules for Withdrawal Liability Disputes," sponsored by the International Foundation of Employee Benefit Plans and administered by the AAA.

4

First, the rules on which Allega bases its argument are the AAA rules effective as of June 1, 1981—not the version approved in 1986. *See* Attachment A to Allega's Response, Dkt. 42-1. The PBGC approved the 1981 version of the AAA rules in 1985. *See* 50 Fed. Reg. 38,046 (Sept. 19, 1985) (finding that the rules "will be substantially fair to all parties involved in the arbitration of a withdrawal liability dispute and that the American Arbitration Association is neutral and able to carry out its role under the procedures"). Shortly thereafter, in 1986, the AAA revised its rules, and on June 20, 1986, the PBGC expressly approved the 1986 AAA rules as revised. *See* 51 Fed. Reg. 22,585 (June 20, 1986). The 1986 rules provide, in relevant part:

> Section 7. INITIATION OF ARBITRATION
>
> Arbitrations under these Rules are initiated in the following manner:
>
> (a) (i) The initiating party gives notice to the other party of its intention to arbitrate (Demand) which notice shall set forth a brief description of the dispute and shall include the amount involved, and (ii) files at any Regional Office of the AAA two (2) copies of said notice, together with the appropriate administrative fee as provided in the Administrative Fee Schedule.

This is precisely the way the rule reads in the AAA rules as amended in February 2013. Allega's contention that the PBGC has never approved the mandatory requirement to provide the arbitration demand to the AAA in order to initiate arbitration is not correct; the PBGC approved that requirement, at the latest, in 1986.

In any event, Allega's assertion that the 1981 and 2013 AAA initiation rules are materially different regarding the required arbitration initiation procedure also lacks merit. Contrary to Allega's claim, the original 1981 rules approved by the PBGC do not set out the requirements for initiating an arbitration as alternatives, and do not use "or" to

5

separate those requirements. The 1981 AAA rules (Attachment A to the Response) state in relevant part:

> Section 7.—Initiation of Arbitration:
>
> Arbitration may be initiated in the following manner:
>
> (a) Under an arbitration provision in a plan document calling for arbitration under the Rules or by the AAA, the initiating party shall give notice to the other part[y] of its intention to arbitrate (Demand), which notice shall contain a statement setting forth a brief description of the dispute, the amount involved, if any, the remedy sought;
>
> (b) By filing at any Regional Office of the AAA two (2) copies of said notice, together with the appropriate administrative fee as provided in the Administrative Fee Schedule;
>
> (c) [ ];
>
> (d) The AAA shall give notice of such filing to the other party. ...

The subparagraphs in this Section are not—contrary to Allega's representation—set out in the "alternative" by the use of the word "or" between them. The arbitration initiation provision plainly contemplates that the party seeking arbitration provides the required notice to the other party "by filing" its arbitration demand "at any Regional Office of the AAA." That subsection (d) provides that the AAA—not the party demanding arbitration—then gives notice of the filing of the arbitration demand to the other party confirms this reading (and would be unnecessary were arbitration initiated by notice sent directly to the opposing party rather than the AAA). Allega's interpretation of this provision as setting out alternative options for the initiation of arbitration is,

6

therefore, untenable; the misrepresentation in its Response that the provisions are separated by the disjunctive "or" is inexcusable.

Finally, on this point, it bears repeating (the Court previously explained this in Order II, at 6 and 8) that the Plan not only incorporates the AAA arbitration rules by reference; it expressly sets out the manner in which arbitration must be "initiated":

> Manner of Initiation: Arbitration is initiated by written notice to the Chicago Regional Office of the American Arbitration Association ("AAA") with copies to the Fund (or if initiated by the Fund to the Employer) and the bargaining representative (if any) of the affected employees of the Employer. Such arbitration will be conducted, except as otherwise provided in these rules, in accordance with the "Multiemployer Pension Plan Arbitration Rules" (the "AAA Rules") administered by the AAA. The initial filing fee is to be paid by the party initiating the arbitration proceeding. Arbitration is timely initiated if received by the AAA along with the initial filing fee within the time period prescribed by ERISA Section 4221(a)(1).

In view of these express provisions for initiating arbitration set forth in the Plan itself, Allega's contrary interpretation of an outdated version of the AAA rules lacks any merit whatsoever. The question of the PBGC's approval of the requirement to file the arbitration demand with the AAA in order to "initiate" arbitration under the Plan is not an issue that requires further fact development and is appropriately addressed as a matter of law.

For much the same reason, Allega's contention that initiation of arbitration by providing notice to the AAA rather than to the opposing party was "discretionary" under the 1981 version of the rules—because the 1981 rules said that arbitrations "may" be initiated in the manner set forth—also fails. The 1986 rules governing the initiation of arbitration, which were expressly approved by the PBGC, do not differ in their

7

requirements from the 2013 version of the rules; both state simply that arbitrations "are initiated" in the manner described. The distinction in language between the 1981 and 1986 versions of the arbitration initiation rules, moreover, is immaterial: as discussed above, the 1981 rules do not set out alternatives from which a potential claimant could select one method or another; they set out only one method of initiation, so any distinction between "may" and "are" could have no effect.

Allega also complains that the AAA fees required to initiate arbitration have escalated dramatically, in both number and amount, and that the current fees have never been approved by the PBGC. This short answer to this argument is that the fees are not at issue in this case; the Plan does not claim that the arbitration is untimely because Allega did not pay the required fees. Nor has Allega argued in any of its submissions that it did not submit its arbitration demand to the AAA because it thought the fees were too high. To the contrary, Allega is the party purporting to initiate the arbitration through the AAA, and it has apparently paid the required fees without protest (it does not maintain otherwise). This argument is a red herring; the prevailing AAA fees are not the reason that Allega failed to submit its arbitration demand to the AAA in a timely manner.

Reprising another argument that the Court has already considered and rejected (Order II at 9-10), Allega also argues that the statute of limitations for initiating the arbitration should be equitably tolled because the Plan failed to respond to Allega's request for review of the withdrawal liability assessment pursuant to 29 U.S.C. § 1399(b)(2)(B). This argument fails as both a matter of fact and law. Allega maintains that the Plan's failure to respond to the review request "effectively prevented Allega" from timely initiating the arbitration, but that argument ignores the fact that Allega had

no more information from the Plan at the end of the 180-day period than it did at the beginning yet it nevertheless sought to initiate the arbitration before the deadline. Nor did Allega have additional information two weeks after the deadline passed when it finally sent the arbitration demand to the AAA. The Plan's failure to respond to Allega's review request might have necessitated some discovery or other accommodation during the course of arbitration, but the lack of response plainly did not cause Allega to submit the arbitration demand to the AAA after the statutory deadline. Allega knew it had to file an arbitration claim; it just erred in how it went about doing so.

As a matter of law, the argument fares no better. Of the two cases Allega cited in support of this argument in its motion to dismiss, the Court held that its descriptions of both were "so off-base that they compel consideration of whether the descriptive errors were the product of good faith." Order II at 9 n.10. Nevertheless, Allega continues to rely on one of those cases (*Central States, Se. & Sw. Areas Pension Fund v. St. Louis Post Dispatch, LLC*, No. 07 C 1384, 2007 WL 2492084 (N.D. Ill. Aug. 28, 2007)). It does, however, add two others that stand for the proposition that the time limit for initiating a withdrawal liability arbitration can be equitably tolled. *See Sw. Areas Pension Fund v. Slotky*, 956 F.2d 1369, 1376 (7th Cir. 1992); *Central States, Se. & Sw.Areas Pension Fund v. Premarc Corp.*, No. 94 C 1927, 1994 WL 457170 (N.D. Ill. Aug. 22, 1994). That much is true, but Allega fails to identify any basis to warrant equitable tolling. It asserts that the Plan "duped" it from filing a timely arbitration demand, but that conclusory statement is belied by its previous acknowledgement that it received no responses at all to its review requests. *See* Def.'s Mem. ¶ 4, Dkt. 16 ("[N]o decision, explanation, or retort of any kind was sent by [the Plan]."). Indeed, Allega has already confirmed that,

notwithstanding the Plan's lack of response to its review requests, it knew it was up against the deadline for initiating arbitration and therefore attempted to do so. *See id.* ¶ 5 ("With its July 17, 2013 deadline to once again 'initiate' arbitration looming, and with Central States stubbornly refusing to comply with its obligatory 'shall' legal requirement and respond to Allega's request for review, Allega again timely noticed its initiation of arbitration on July 9, 2013.").[3] All along, Allega's argument has been that it timely initiated arbitration, not that the Plan misled, or "duped," it about the arbitration demand deadline.[4] Allega knew what the deadline was; it just failed to file its arbitration demand in the proper manner. That shortcoming is not one for which the Plan bears responsibility and there is no basis to equitably toll the limitations period based on the answers to fact questions (set forth in Allega's Response) about what the Fund representatives said to Allega in response to its review request.[5]

Allega's remaining arguments similarly attempt to recharacterize as matters requiring fact discovery several legal arguments premised on allegations that the Plan failed to comply with its statutory obligations. It cites no authority, however, to support its arguments that a breach of fiduciary duty by the Fund or a failure to issue a

---

[3] As noted in Order I (at 3 n.4), Allega appears to have miscalculated the arbitration deadline by one day; the arbitration deadline was actually July 16, 2014. That mistake is immaterial to the outcome of this case, however, because Allega missed the deadline under either calculation.

[4] This distinguishes this case from *Premarc*, where the employer misunderstood the arbitration initiation deadline because it was unaware that the Plan had responded to the review request, thereby starting the limitations period sooner than the expiration of the 120-day statutory period.

[5] In other words, because there is no material fact dispute concerning Allega's knowledge of the deadline for initiating arbitration, the questions Allega identifies in its Response (at 6)—all variations of "what did the Fund representatives communicate to Allega"—are irrelevant.

withdrawal liability assessment "as soon as practicable after an employer's complete ... withdrawal" would equitably estop the Plan from invoking the statute of limitations to bar arbitration. And why would they? While the Court does not condone the Plan's apparent failure to respond to its request for a review of the withdrawal liability assessment, the statutory scheme plainly contemplates that possibility, as it requires the employer to initiate arbitration within a 60-day period after the earlier of (i) 120 after the request for review or (ii) the date that the response to the review request is received. *See* 29 U.S.C. § 1401(a)(1). The statute requires the employer to initiate arbitration *sooner* if a response to the review request is received, but even if no response is received, the arbitration must be initiated within 180 days of the review request. Plainly, the statute precludes tolling on the basis that no response to a review request is provided.

The equitable defenses Allega asserts have no bearing on the timeliness of the arbitration demand. If defenses to anything (and the Court intends no endorsement of them as such), they are defenses to the withdrawal liability assessment. As such, they are required to be asserted *in* arbitration, not as a defenses *against* arguments favoring the timely initiation of arbitration. And, indeed, the Seventh Circuit has expressly confirmed that failure to timely file an arbitration demand waives affirmative defenses. *See Robbins v. Chipman Trucking, Inc.*, 866 F.2d 899, 902 (7th Cir. 1988) (noting that an employer "cannot bypass arbitration and litigate a defense to a withdrawal liability claim"). It would be utterly anomalous to hold that defenses available only when an arbitration is timely initiated provide a basis for tolling the prescribed period within which that arbitration must be initiated. And finally, since Allega cannot litigate these defenses outside of arbitration, there is no need for discovery at this stage to support them; that

such defenses may present fact issues is not material to the timeliness of the arbitration demand.

In response to the Court's Rule 56(f)(3) notice, it was incumbent upon Allega "to come forward with all of [its] evidence." *Celotex,* 477 U.S. at 326. The Court has given Allega ample opportunity to do so, yet its Response instead rehashes arguments that the Court has already rejected and fails to identify other issues, whether legal or factual, that preclude judgment for the Plan on its complaint to enjoin the arbitration as untimely. Its inability to identify any such issue confirms what Allega itself asserted in support of its motion to dismiss, namely that "[s]tatutory and regulatory construction and interpretation are issues of law for a court to decide." Def.'s Mem. 6, Dkt. 16. The Court agrees. In the absence of any disputed issue of material fact that bears on such interpretation, the Court grants summary judgment to the Plan on its complaint and will enter an order permanently enjoining Allega from proceeding with the withdrawal liability arbitration it initiated in July 2013.

Date: June 10, 2014

John J. Tharp, Jr.
United States District Judge